UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-260 (RMC) |
| | : | |
| v | : | |
| | : | |
| RICARDO SELDON | : | |
| | : | |

GOVERNMENT'S MOTION FOR GUIDELINES CREDIT AND
MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(b)(2) of the Sentencing Guidelines, to adjust the defendant's offense level down one level reflecting the defendant's early plea of guilty in this matter, which permitted the government to avoid preparing for trial and permitted the court to allocate its resources efficiently. The United States also submits this memorandum in aid of sentencing.

I.     BACKGROUND

On July 27, 2005, the defendant pled guilty to a three count information charging him with Unlawful Possession of a Firearm in a School Zone, in violation of 18 U.S.C. § 922(q)(2)(A); Unlawful Possession with Intent to Distribute Cocaine Base, in violation of 48 D.C.C. § 904.01(a)(1); and Carrying a Pistol Without a License, in violation of 22 D.C.C. § 4504(a). At that time the defendant admitted to the following:

On or about June 28, 2005, at approximately 11:00 p.m., Metropolitan Police Officers were patrolling the area around the 300 block of Decatur Street, NW, and Delafield Place, NW, in Washington, DC. Barnard Elementary School is a public school located at 430 Decatur Street, NW.

The school's buildings and grounds are within 1000 feet of the corners of 3rd and Decatur Streets, NW, and 3rd Street and Delafield Place, NW. Police officers saw the defendant standing on the corner of 3rd and Decatur Streets, NW. When the defendant saw the police officers, he ran up 3rd Street, NW, and turned onto Delafield Place. In the 300 block of Delafield Place, NW, the defendant removed a handgun from his waist area and threw it under a car. Officers chased the defendant along Delafield Place, NW, where the defendant threw a plastic bag. Both the gun and the plastic bag were recovered and examined. The gun was a Ruger 9 mm pistol, loaded with twelve bullets. The plastic bag contained 6.6 grams of cocaine base. The defendant also had $1,320.00 in cash.

The defendant admitted that he knowingly and intentionally possessed the Ruger 9 mm pistol and ammunition. The pistol was test fired and found to be operable. The defendant did not have a license to carry a firearm in the District of Columbia. The defendant also admitted that he intended to distribute the cocaine base. At the time of his arrest, the defendant had a 1999 criminal conviction for Possession of an Unregistered Firearm and a 2000 criminal conviction for Unlawful Entry.

## II.    SENTENCING CALCULATIONS

    A    Statutory Minimums and Maximums

Pursuant to 18 United States Code §922 and § 924, Count One carries a maximum sentence of 5 years incarceration, a $250,000 fine and up to one year of supervised release.[1]

Pursuant to 48 D.C.C. § 904.01(a)(1), Count Two carries a maximum sentence of thirty years incarceration, a $500,000 fine, and up to three years of supervised release.

---

[1] A sentence imposed for violating 18 U.S.C. § 922(q) must run consecutive to any other sentence imposed.

2

Pursuant to 22 D.C.C. § 4504(a), Count Three carries a maximum sentence of 5 years incarceration, a $5,000 fine, and up to three years of supervised release.

    B.    <u>Federal Sentencing Guidelines Calculation</u>

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 25. <u>See</u> PSR ¶ 25. (This calculation contemplates a three level departure for acceptance of responsibility.) The PSR calculates the defendant's criminal history as Category I. <u>See</u> PSR ¶ 32. Therefore, the PSR calculates the guideline range for count one of the Information, Unlawful Possession of a Firearm in a School Zone, at 57 to 71 months. <u>See</u> PSR ¶ 55.

    C.    <u>District of Columbia Sentencing Guideline Calculation</u>

The PSR writer also consulted the District of Columbia voluntary sentencing guidelines for counts two and three of the Information: Possession with Intent to Distribute Cocaine Base and Carrying a Pistol without a License. The defendant's guideline range for the offense of Possession with Intent to Distribute Cocaine Base is 12 to 30 months. <u>See</u> PSR ¶ 56. The defendant's guideline range for the offense of Carrying a Pistol without a License is 1 to 12 months. <u>See</u> PSR ¶ 56.

**III.    <u>GOVERNMENT'S RECOMMENDATIONS</u>**

    A.    <u>Acceptance of Responsibility</u>

The government agrees that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea early enough in the proceedings to avoid the government's having to prepare for trial, and he appears to have met the requirements of Section 3E1.1 with respect to cooperating in the pre-sentence investigation.

Accordingly, the government is moving the Court to grant the additional one level decrease in base offense level provided for in that Guideline provision.

      B.      <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the defendant, it is the government's position that the Court should impose a sentence at the low end of the guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 769.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply

4

the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence.

5

See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the

Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350

F. Supp. 2d 910 (D. Utah, 2005) – the day after <u>Booker</u> was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report.

      C.     <u>Application of the District of Columbia Superior Court Sentencing Guidelines</u>

In December 2003, the District of Columbia Advisory Commission on Sentencing recommended that sentencing guidelines be introduced in D.C. Superior Court. Such guidelines were promulgated and instituted in June 2004. The D.C. Superior Court Guidelines are, and always

have been, voluntary. However, for the reasons discussed in section B above, the government respectfully recommends that the Court sentence the defendant within the D.C. Guidelines range as calculated in the Presentence Report for counts two and three.

        D.        <u>Basis for Government's Sentencing Recommendation</u>

The government respectfully recommends that the Court sentence the defendant to the statutory maximum sentence for the offense of Unlawful Possession of a Firearm in a School Zone. Such a sentence (60 months) is within the defendant's guidelines range, and is appropriate, given the defendant's conduct. The defendant has received a substantial benefit from this plea, and all the leniency he should receive is encompassed in the plea.

This Court is well aware of the damage caused in this community by illegal firearms. Despite the defendant's young age, this represents his second conviction involving a firearm. Furthermore, despite the opportunities the defendant has had to learn from his mistakes, and to make better choices, he continues to arm himself, thereby endangering the citizens of the District of Columbia. In fact, while pending sentence in this case, the defendant was arrested for yet another offense involving possession of a loaded firearm and possession with the intent to distribute cocaine base. (That case is currently pending indictment.) In a city where guns are illegal, and gun violence so damaging, such behavior must not be tolerated. The defendant's prior criminal history, the offense for which he now stands before this Court, and the behavior he exhibited while pending sentence in this case, show a blatant disregard not only for the law, but also for this Court.

**IV.**        <u>**CONCLUSION**</u>

Wherefore, the government respectfully requests that the Court sentence the defendant to 60 months of incarceration for the offense of Unlawful Possession of a Firearm in a School Zone, and

12 months of incarceration for each of the two remaining offenses: Unlawful Possession with Intent to Distribute Cocaine Base, and Carrying a Pistol Without a License. The government requests that the 12 months sentences be served concurrent to each other, and consecutive to the 60 months sentence for Unlawful Possession of a Firearm in a School Zone.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        Bar No. 451058

        _____
        Catherine K. Connelly
        Assistant United States Attorney
        Major Crimes Section, Mass.  Bar No. 649430
        555 4th Street, N.W.  #4844
        Washington, DC 20001
        Phone: 616-3384
        Fax: 353-9414

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Harry Tun, this 11th day of July, 2006.

        _____
        Catherine Connelly
        Assistant United States Attorney